May it please the court. Counsel? Your Honor, we're here seeking the court's decision, reversing the trial court's decision and directing it to remand this case to state court. The removal in this case was based upon an argument of fraudulent joinder which the court rejected in all respects except one, and that is raised judicata. The court basis raised judicata decision on two cases, Strode and Stern. Strode, a 1906 case, Supreme Court of Missouri case, and Stern, this court's 2006 case, both of which relied upon a principle of transmitted right claiming that the Missouri wrongful death claim was a transmitted right from the deceased plaintiff. Well, that wasn't the basis of Strode at all. I mean, Strode discussed that a lot, but it made it crystal clear that was not the basis of the ruling. Well, that's what it was relied upon by the court in the underlying action, and it also was relied upon in... What do you mean, what underlying action? This case, this is what Judge Fenner said that it meant, and also in the Stern case, if I can read to you, Judge, what was said in Stern... I read Strode, and I know Stern read Strode just like I do. And it said, the district court properly held that Ruth Sterns cannot maintain a claim pursuant to 537.08 because she cannot show that her son had a viable cause of action at his death. Now, Stern absolutely does not discuss the O'Grady case, which is a Missouri Supreme Court case. Compare this language, Judge. Let me stop you, Counselor. You started by talking about remand. Did the district court rule on the merits with respect to the non-manufactured defendant? No, sir, he did not. He said that they had viable claims, in his view, based upon the pleadings, and therefore, raised judicata was the only thing that barred those claims. Would you agree that once they were gone, the court had jurisdiction to address the merits of the manufactured defendants? If the raised judicata decision is correct, there's no need to get there, and that's where the court stopped in his analysis. You're not following me. I'm not. I was the author of Simpson v. Tomure. Okay. Yes, sir. Following the Supreme Court's instructions, once the non-diverse defendant is gone, there is diversity jurisdiction, and when the district court reaches the merits with respect to the diverse defendants, that's the final judgment. Yes, sir. The remand issue is moot as to them. Yes. So when you argue remand, you're only talking about, as far as I know, the non-manufactured defendants. Well, if you believe that there is raised judicata, then you maintain it, but there was no basis to remove it in the first place. If there's no basis to remove in the first place, then it has to all be remanded for determination, particularly the raised judicata determination. No, didn't you read that Supreme Court case? Yes, sir, I did, but I don't read it in the same way that the court does, in that if you don't have jurisdiction to start with. Sure, we've read it consistently. Well, I appreciate it. And you go, you know, find another circuit. You know, we're bound by our controlling precedent. So your argument on remand is, as far as I can tell, by controlling Eighth Circuit and Supreme Court law, addressing only the non-manufactured defendants because there was no decision on the merits as to them. There was no decision on the merits as to them. Okay, so we could, those after, if the, whatever the results on the merits are as to the manufacturing defendants, that will end the case, and then there would be perhaps a remand to the state court for the non-manufacturing defendants. Well, we certainly would accept that better than the current result. However, I don't. I wouldn't think so because you won't get very far, but okay. Well, I. That's jurisdictional dotting I's and crossing T's. The reality is that I don't know how the court dismisses the manufacturing defendants in light of the decision in O'Grady. Okay, we're back to there. We do get back to there. Yeah, and that's where I want to focus your thoughts for a moment. Remember the language that I just gave you from Stern. The plain language of the statute itself does not condition recovery upon the existence of a right to sue at either the time of injury or the time of death. So it's exactly, exactly opposite of the language I just read to you from Stern. That's the Missouri Supreme Court. Stern doesn't deal with O'Grady at all. And just so that it's clear that that's not the only Missouri Supreme Court precedent that is at odds with Stern's conclusion in that regard, Lawrence, the 2009 Missouri Supreme Court case, holds that the Wrongful Death Act creates a new cause of action where none existed at common law and did not revive a cause of action belonging to the deceased. The right of action thus created is neither a transmitted right nor a survival right. That's 2009 Missouri Supreme Court. Now, addressing all these cases on exactly the same facts as we have here, that being a smoking case, a manufacturing case, as the court noted, we have the Smith decision, Missouri Court of Appeals case that's been before the Missouri Supreme Court twice. Another popular interpretation is that the wrongful death statute at issue requires the decedent to have been able to bring a cause of action at the time of his or her death. O'Grady firmly establishes that neither of these two interpretations applies to the Missouri wrongful death statute. It's stated that... Do you agree that your argument requires us to find that the Supreme Court or conclude the Supreme Court of Missouri in O'Grady implicitly overruled Strode? Yes, sir. I think that that's the clear implication on the derivative right theory that Strode expounds. Without mentioning it and in an opinion that says this is limited to these unusual facts, they nonetheless implicitly overruled a case that has been followed before and since by lower Missouri courts. It has been followed and criticized by lower Missouri courts, including Smith, on these facts, which has been before the Missouri Supreme Court now twice, and they have upheld Smith. So I think it's important to note that Strode decided a different statute, Judge, one that was amended substantially, the one that we're here dealing with, to expand the rights and the benefits and which now, according to O'Grady, gets a liberal construction. You mentioned the fact that O'Grady says it's limited to its facts only in this sense. O'Grady was a wrongful death claim brought on behalf of a viable fetus. And the court says we are not deciding the issue of whether a non-viable fetus will have such a claim. That's the only limitation that I see in the opinion. If you read it, that's the only limitation. And as I say, two subsequent decisions of the Supreme Court have relied upon it, and as does Smith. So the Strode case is certainly a product of its time with a different statute. The statute that we're here to address that was amended. And why is your argument not necessarily limited to our court and bank? Is the argument limited to the court and bank? Stern is controlling. Smith is not. Stern had both O'Grady and Strode before it. They did, but they did not have the decision that I cited to you in Lawrence, the 2009 decision. So you do have more information, which I think that would allow this panel to update the Stern decision based upon new information. But the Strode needs to be viewed in terms of its strict construction formulation as compared with what O'Grady says must be done, that is a liberal construction to effectuate the most recovery available to a decedent's heirs. And the 1979 amendment that we're here to discuss greatly expanded the recoveries available to a plaintiff's estate. Things like companionship, comfort, instruction, guidance, counsel are not available to a personal injury plaintiff. I posit the question. The statute specifically allows you to recover funeral expenses. How can it possibly be that claims that reside in different individuals, the personal injury claim residing in the decedent, he had that claim. The heirs of the estate have the claim. So we have separate parties who can bring these claims. And then we have separate damages available to them. So there is no chance of double recovery of these damages because the wrongful death damages don't even arise. It's clear you limited your claim for damages to non-double? In Missouri, you just have to plead all damages allowed by law. And it's up to the court to determine what damages are submissible at the time of instruction, Judge. And so I don't believe we limited that by pleading, but we're not required to. But it certainly is an argument to be made to the court that you have to exclude these damages that are recovered. And I think that that's a fair argument. But nonetheless, if you do a typical, which we ask the court to do a typical raised judicata analysis, which this court has done many times, and I've read your opinions with great interest on this issue. You know, the two basic considerations are, are the same parties involved? And are they, in fact, making the same claims? And they're not in this instance. We have different parties involved. You had the personal injury plaintiff, Mr. Thompson, who is now deceased, claiming that his cancer and all the attendant pain and suffering that he had recovered in the previous action. The family now is seeking the things that they are allowed under the 79 Amendment, companionship, comfort, instruction, and guidance and counsel, now because he's gone. He was still able to provide all those things. They couldn't seek them in the personal injury action. Nor could they, you know, it's self-evident they couldn't seek the funeral expenses. And yet the statute allows them to recover for those. And so we have two separate parties with different claims. And so there is no chance for a double recovery in this action that I can see. And so we asked the court in this instance to remand the case and to reinstate our claims. And I would like to address just one point that the defendants raised, and that's this idea that reis judicata is decided on the basis of a transaction. If it's the same transaction, there's reis judicata. They rely on this Chesterfield Village case. But if you read the Chesterfield Village case closely, transaction means that you're seeking the same damages. If you're seeking different damages or different remedies, then it's not the same transaction. And so we would ask the court to send the case back. Thank you very much. Thank you. Mr. Davis? Yes, sir. May it please the court. Thank you, sir. There are two undisputed facts that underlie Judge Fenner's decision. The first is that Mr. Thompson, during his lifetime, brought an action against the defendants and obtained a substantial recovery after trial. The second is that the basis of that suit was the same set of operative facts that were pleaded in the wrongful death claim that Judge Fenner dismissed, which is specifically the conduct of these defendants in the manufacture and sale of cigarettes that Mr. Thompson smoked during his lifetime. Now, those two undisputed facts, as applied to the law, set up two independent reasons for dismissal of the wrongful death claim, related but independent. The first is arising from Missouri Statute 537.085 that gives any defense to a wrongful death plaintiff that the defendants would have had had the action have been brought during the lifetime of the decedent. And so for purposes of that analysis, the question becomes, what defense would have been available had Mr. Thompson, in his lifetime, brought a second suit for damages arising out of the same set of operative facts as his previous suit, which was fully adjudicated? And the defense of res judicata would have compelled the dismissal of that claim. And just as the defense would have compelled dismissal of that claim, by operation of 537.085, that defense was given to the wrongful death defendants, as recognized by Judge Fenner, as a basis for the decision. The second principle arising from those two undisputed facts that compels dismissal and affirmance of Judge Fenner is the operation of Strode's One Discovery Rule as applied to 537.080. Strode has been the law of Missouri since at least the One Recovery Rule has been part of the law of Missouri since at least 1906. Do you think that the Missouri law has evolved on that statute since Strode? The statute has definitely been amended, Judge Kelly. There have been changes to the statute. But the fundamental requirement of 080, which is before a wrongful death action can be maintained, it must be shown that the decedent, had he or she lived, would have been entitled to recover damages. That fundamental principle has underlay all the decisions, including O'Grady, certainly including Stern. So there have been changes to the statute. There's no question that in 1979 the statute was changed in its damage component to include non-pecuniary. There has been evolution of thinking in the court since Strode about whether or not the wrongful death claim is properly characterized as transmitted and independent. Let's talk about funeral expenses. Well, I think that Stern completely disposes of that argument, completely disposes of it, because that is basically an argument that because the damages sought in the wrongful death action are different elements than those that could have been sought by the decedent in his own personal injury action, that somehow that creates a situation where it allows the second suit. That was exactly what was argued in- Why wouldn't the Missouri courts create perhaps a fiction and say the decedent would have a cause of action? That was not recoverable until death. Otherwise we have a wrong without a remedy completely, right? I don't think so, if I understand the court's question. How is the recovery of funeral expenses explicitly allowed in the statute remediable other than by this lawsuit? It's only allowed, Your Honor, in the context of a properly predicated wrongful death claim. Well, you say that, but it doesn't take a legal magician to figure out that that claim could survive a strode inquiry. It could not survive it, Your Honor, if the decedent had obtained a recovery during his lifetime because the legislative decision in the statutes is really to put. Did he have a cause of action for his future funeral expenses? No, sir. He did not have that cause. But as Strode says- Then the legislature has created a right, and the courts have denied a remedy. I would interpret- That's where you are, right? No, sir. It respectfully is not where I am because I believe what happened is that the legislature created an additional element of damage. And as this court made very clear in Stern, in your Stern decision, you cannot confuse different elements of damage and different damage claims with a cause of action. So there was no creation. That very argument was presented to Judge Gibson in that panel in 06 that because the damages were necessarily different, and, of course, they are. A wrongful death plaintiff, of course, can recover different kinds of damages than the decedent could recover in his lifetime in his own personal injury case. But the court very clearly said to argue that that somehow changes the plain language of the statute, 0.080, is to confuse- What's the plain? I don't see that it's all that plain. In Stern? Would have entitled such person to recover damages in respect thereof. Now, that's what you're relying on, right? 0.080, so Part 1, Sub 1. I'm looking at- Yes, what we're relying on is that the- The res judicata- As to the funeral expenses. Res judicata can't have barred that. That claim didn't exist when the decedent was alive. The barring of the action, any wrongful death action, which is the predicate to getting to any element of damage permitted by the statute, is by operation of giving any defense to the wrongful death defendant that they would have had, under 8.5, plus the application of the one recovery rule under 0.80. It's two independent bases. So you're just flipping. You're saying, okay, if you take away my second one, I go back to my first one. Well, I don't mean to be glib about it, Your Honor, but the reality is that there are two independent bases. Now, had Mr. Thompson settled during his lifetime- Well, I'm not sure with respect- When res judicata is the defense, I'm not sure that your two don't come together. Well, I don't read the Strode decision- Also, in terms of glib, I don't understand how your brief could fail to address the Lawrence case, given the quotations from it in the appellant's brief. Well, I think we- The Lawrence v. Beverly Manor case, if we did not address it, it is our failure- It's not on your table of authorities. Then let me address it now, if I could. Lawrence v. Beverly Manor held that it looked at the question of whether or not an arbitration agreement signed between the decedent and the defendant would be binding on the wrongful death plaintiff. There was no one recovery rule. There was no one recovery. It was simply a procedural question for the court, and the court, as it has done since O'Grady, where the statute is ambiguous, will look to the statutory, the legislative intent as the court perceives it and try to interpret the statute consistent with that. And all that Beverly did was to say, the Lawrence case was to say, that in that context, it does not further, in the ambiguity of whether that would be binding, whether it does not further the legislative intent to hold the wrongful death plaintiff to the arbitration forum as opposed to a court forum. It had nothing to do with the one recovery rule. It had nothing to do with entitlement to bring the suit in the first- Well, it's certainly a defense. Well, it would be a defense. It was raised in that context of 085. It certainly would be raised properly in the wrongful death case because it would have been a defense of a court case. I assume that's how it was couched before. But it did not address any issue. There's never been any question that the predicate to a wrongful death case is the decedent's ability to have maintained an action to recover for damages if he or she had not died. And that's an 080 principle. I mean, I'm not helping the court. The arbitration, the obligation to arbitrate is a defense in many, many tort cases. Yes. All right, so that's an 085 issue. Are you saying Lawrence somehow blew that, or what did they do with it? No, I don't think they blew it at all. Well, they said that there's no obligation for the wrongful death plaintiff to arbitrate even though the decedent would have had to. Is that correct? That's correct. They did hold that. Okay, now how did they get there given your interpretation of 085? Well, I— It's just like res judicata. Actually, it isn't to me. I don't know that I could articulate it. It seems like the defense of release that you dealt with in Stern, the defense of res judicata, which are claim preclusion events. Those are illegal principles that stop lawsuits. And the court in Lawrence was not dealing with the question of whether or not the wrongful death claim could proceed at all, which is Strode, Stern, etc. It was dealing with the simple question of where does it proceed? And in that context, the court did say that the claims were sufficiently independent that they felt it would be unfair and not in pursuit of the legislative intent to require that wrongful death plaintiff to arbitrate as opposed to litigate in court. But I do not believe that decision could in any way override the plain language of the statute which gives any defense and certainly did not even deal at all, I don't think, with 0.080, which is the entitlement to bring a claim in the first instance. There was no question in Lawrence that the person could bring the claim under 0.080. It was simply where it needed to be filed. But I do take your point that it perhaps says that any defense is not any absolute defense and if one treats forum as the same and equivalent defense as release, which you were dealing with in Stern, or res judicata as we had here, I guess as I think it, to me, the independence comes this way. If Mr. Thompson of the two principles, I don't think I'm articulating it well, but maybe this will be better. If Mr. Thompson had settled his claim and given a release as opposed to litigating and winning, we would only be here on the one recovery rule. We would never be here. It would be exactly like Stern. It would not be res judicata because there would have been no defense that during his lifetime he received a full and final resolution of his claim. There would absolutely be the result in Stern. And I think what we have here, Judge Logan, Judge Kelly, is simply this. They have not cited and we looked and did not find any Missouri case or any case of any court, federal in diversity or anywhere else, applying Missouri law that has permitted a wrongful death claim to go forward where during the decedent's lifetime he or she obtained a recovery. And that is the law of Stern. It's the law of Strode. It has not been questioned. Would it be different in your view if the manufacturers had gotten a favorable jury verdict in the P.I. case? It would be different in this sense. If we had received a favorable verdict, res judicata would apply, but because there would have been no recovery, the one recovery rule would not apply. The one recovery rule of Strode, as applied in Stern, is predicated on the fact that during the decedent's lifetime they obtained some kind of recovery. That's the predicate of it. So if he had not obtained a recovery because he had lost his case, then we would be seeking dismissal solely on or affirmance solely on Judge Fenner's ground of res judicata. I see my time is up. Thank you very much, sir. Very good. Thank you. Mr. McClain, do I have some time? Two and a half minutes, Your Honor. Do you think there would be a difference if the personal injury verdict had been for the defendants? No. They may have been able to assert res judicata on some issues, however. I do believe that she would have been able to maintain a wrongful death claim because, as I think that Lawrence and the other cases hold it separate and apart, the issue, this is the point that counsel was trying to address, Smith addresses it directly, Your Honor, this issue of could he have recovered during his lifetime and what's the effect of defenses. The court in Smith interprets that, and I think correctly, and kind of answers the question that you were raising. That what we're talking about here is whether or not the individual is of the class of persons that can bring such a claim like a tort claim at the time of his death. Did he have a strict liability cause of action, absent defenses? Did he have a negligence claim? Was he that type of person is what that language needs to be read to say, not whether or not there was a defense to that claim. Otherwise, you could bring a statute of limitations defense to such claims for people that are sick, and you can't because there's a separate statute of limitations in the wrongful death statute, specially created just like the entire law because it's a separate cause of action. And so that's the way to reconcile that question and properly understand what it means to be able to bring a claim at the time of your death. Now Stern may be reconcilable here, Judge, with the expansion provided in Lawrence. On the basis of release, and maybe it's an equity principle that the court's really addressing in Stern, in that the decedent has made a bargain here on behalf of his family and estate that he will not bring a wrongful death claim after their death, and they receive added compensation. But in the case of an adjudication here, we received no compensation for, as you point out, the funeral expenses. Yeah, but what about prospective damages? Weren't they available? No, not for a death loss. He was compensated nothing, nor was the family, for the fact that he would not have the class of damages that we were talking about, companionship, comfort. The jury can consider in awarding non-compensatory damages to the spouse in the personal injury case? You don't think the jury can? Sure they can. All right, so then that would be a double recovery, wouldn't it? No, I don't think so. It sure looks like it to me. Let me suggest this alternative way to look at that question. I think that the jury was instructed that, in fact, they could award such damages as were reasonably certain to occur. No one testified in the first trial that he was certain to die earlier, and they were not asked to consider the fact that he would be dead and not providing any comfort, companionship, guidance, direction to his children and grandchildren, which are allowed to recover under the statute at the time of the trial. It simply wasn't part of the evidence, nor was it recoverable as part of the PI claim, just like the funeral expenses. None of those things were argued, nor could they be recovered at the time of the personal injury trial. I will grant the court its point in that he had diminished contributions in the nature of his involvement with the family, but he was alive, and he was active, and he testified about how much the family meant to him and how much he cherished his days with them and how much he looked forward to spending time with his grandchildren and playing baseball with them and directing them. Those were all parts of the trial, and the jury did compensate the family for the effect that his illness had upon his ability to participate. But that's much different than what happens at death. You know, we all diminish over time in terms of what we can do, and he had greater diminishment than most of us because of his injuries, but he was alive, and now he's not. And the legislature has created a remedy when that's the situation that occurs at the wrong of a defendant. So my time is up, and I appreciate the court's willingness to engage this issue with us. So every class member in the Missouri tobacco litigation will have this cause of action, in your view, when the smoker dies? Will every smoker have a wrongful death claim? I'm not sure I've thought that through enough to answer, but yes, in general, a wrongful death claim that's caused by a- Well, that was a remedy to the state for Medicare, Medicaid reimbursement. It wasn't a private class action. It wasn't a private class action in Missouri, and I don't think Minnesota had one either. Judge, Florida did. Florida had a class action, but Minnesota's recovery was, and I was involved on behalf of the state of Missouri, we recovered the damages of the state for paying for six smokers, essentially. The individual smokers didn't recover anything. Thank you. Thank you, counsel. The case has been very well briefed and argued, and we will take it under advisement.